UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DR. BARRY SARTIN<br><br>V.<br><br>EKF DIAGNOSTICS INC. & STANBIO LABORATORY, L.P. | CIVIL ACTION NO.:<br><br>SECTION: |

## CLASS ACTION COMPLAINT

Plaintiff, Dr. Barry Sartin (hereinafter referred to as "Plaintiff"), brings this action on behalf of itself and all others similarly situated, and avers:

### Introduction

1. More than two decades ago, the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 (hereinafter referred to as "TCPA") was enacted into law. The law responded to countless complaints by American consumers and businesses about the cost, disruption and nuisance imposed by junk faxes. The law prohibited the transmission of facsimile advertising without prior express invitation or permission of the recipient. In 2005, because consumers and businesses continued to be besieged with junk faxes, Congress strengthened the law by amending it through the Junk Fax Prevention Act of 2005 (hereinafter referred to as "JFPA"). As amended, the law requires senders to include in their faxed advertisements a clear and conspicuous notice that discloses to recipients their right to stop future junk faxes and explains how to exercise that right.

2. Plaintiff brings this class action to recover damages for and enjoin massive junk faxing by defendants, EKF Diagnostics Inc. and Stanbio Laboratory, L.P. (hereinafter referred to as "Defendants") in direct violation of the TCPA. Upon information and belief, Plaintiff avers

that Defendants has blasted thousands of junk faxes nationwide in direct violation of the TCPA and the regulations promulgated under the act by the Federal Communications Commission (hereinafter referred to as "FCC"). Defendants' violation includes, but is not limited to, the facsimile transmission of advertisements that fail to comply with the Opt-Out Notice Requirements on September 24, 2015 to Plaintiff's attention, a copy of which is attached as hereto as Exhibit 1.

## Standing and Jurisdiction

3. This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331. *See Mims v. Arrow Financial Services, Inc.*, 132 S.Ct. 740 (2012).

4. Venue is proper in this Court under 28 U.S.C. § 1391(b) and (c) because a substantial portion of the facts and circumstances that give rise to the cause of action occurred in this District.

## The Parties

5. *Individual Plaintiff/Class Representative.* Plaintiff, Dr. Barry Sartin, resides in Louisiana and was the recipient of the fax advertisement sent by Defendants on September 24, 2015.

6. *Defendant.* Upon information and belief, defendant, EKF Diagnostics Inc., is, and at all times relevant hereto was, a corporation organized and existing under the laws of the State of Delaware, having its principal place of business in Boerne, Texas.

7. *Defendant.* Upon information and belief, defendant, Stanbio Laboratory, L.P., is, and at all times relevant hereto was, a limited partnership organized and existing under the laws of State of Texas, having its principal place of business in Boerne, Texas.

## The JFPA's Prohibition Against Junk Faxing

8. In the decade following the law's enactment, however, American consumers and businesses continued to be "besieged" by junk faxes because senders refused to honor requests by recipients to stop. FCC, Report and Order on Reconsideration of Rules and Regulations Implementing the TCPA of 1991, 29 Comm. Reg. 830 ¶ 186 (2003). Congress responded by strengthening the law through the JFPA of 2005. The JFPA continues the prohibition against sending unsolicited advertisements via facsimile transmission, and also implemented the additional requirement that all facsimile advertisements include specific opt-out notices. The FCC has defined a "sender" to include any "person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(a)(3), (f)(8). The TCPA defines an "advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. §227(a)(5).

9. In 2005, the JFPA for the first time required senders to disclose to recipients their right and ability to stop future junk faxes (hereinafter collectively the "Opt-Out Notice Requirements"). 47 U.S.C. §227(b)(1)(C)(iii), (b)(2)(D), (b)(2)(E), (d)(2); 47 CFR § 64.1200(a)(4)(iii)-(vii). Advertisers must place the notice clearly and conspicuously on the first page of the fax transmission and include prescribed information that Congress believed essential to enable junk fax recipients to opt-out of future faxes. Compliance with the Opt-Out Notice Requirements is neither difficult nor costly, and these requirements provide important consumer protections bestowed by Congress upon American consumers and businesses. These protections include giving the consumers and businesses the right to stop unwanted junk faxes, requiring the senders to disclose the right

and explain how to exercise that right, and providing statutory damages for violations. *Further, the TCPA requires that even facsimile advertisements being sent to consumers who consented to receipt, or with whom the advertiser has an established business relationship, must include language on the facsimile which fully complies with the Opt-Out Notice Requirements. 47 C.F.R. § 64.1200(a)(4)(iii)-(vii).*

10. The JFPA for the first time required senders to disclose to recipients their right and ability to stop future junk faxes (hereinafter collectively the "Opt-Out Notice Requirements"). 47 U.S.C. §227(b)(1)(C)(iii), (b)(2)(D), (b)(2)(E), (d)(2); 47 CFR § 64.1200(a)(4)(iii)-(vii). Advertisers must place the notice clearly and conspicuously on the first page of the fax transmission and provide prescribed disclosures that Congress believed essential to enable junk fax recipients to opt-out of future faxes. Compliance with the Opt-Out Notice Requirements is neither difficult nor costly. But these requirements are important consumer protections bestowed by Congress upon American consumers and businesses by giving them the right to stop unwanted junk faxes and to require senders to disclose the right and explain how to exercise that right. Even a fax advertisement sent with permission of the recipient is unlawful if the sender fails to comply with the Opt-Out Notice Requirements. 47 C.F.R. § 64.1200(a)(4)(iii)-(vii).

### JKF Diagnostics Inc.'s and Stanbio Laboratory, L.P.'s Junk Fax Campaign

11. Defendant, JKF Diagnostics Inc., is a global medical diagnostic business that provides a variety of medical products to healthcare providers.

12. Defendant, Stanbio Laboratory, L.P., manufactures and markets healthcare diagnostic products. Upon information and belief, Stanbio Laboratory, L.P. is an EKF Diagnostics, Inc. subsidiary.

13. Upon information and belief, Plaintiff alleges that to advertise their goods and/or services, Defendants has blasted thousands of junk faxes to businesses. Plaintiff alleges Defendants obtained from third parties lists of facsimile telephone numbers and uses such lists to send its junk faxes. Plaintiff alleges that Defendants have blasted junk faxes without first obtaining recipients' prior express permission to receive facsimile advertising, and without complying with the Opt-Out Notice Requirements, in direct violation of the TCPA, JFPA and the FCC's regulations promulgated thereunder.

14. The junk fax sent to Plaintiff were part of Defendants' junk fax marketing campaign. Exhibit 1 advertises and promotes the availability of a GSP kits to physicians, while offering "free validation kits at this time".  Plaintiff did not give Defendants prior express permission to send these or any other fax advertisements to it.

15. The fax identified as Exhibit 1 fails to comply with the Opt-Out Notice Requirements. By failing to include a complaint opt-out notice, Defendants are precluded from raising an established business relationship defense in any litigation arising from that fax advertising.  Defendants are also precluded from raising the defense that Plaintiff solicited any such faxes or gave express prior permission.

16. Failing to provide a complaint opt-out notice on a facsimile advertisement is a separate and distinct violation of the TCPA as well as the regulations promulgated by the FCC. The TPCA statute provides for a private right of action "based on violations of … regulations prescribed under the TCPA." *See* 47 U.S.C. § 227(b)(3)(A). *See also Mims v. Arrow Financial Services, LLC*, 132 S.Ct. 740, 746 (2012) (TCPA "authorizes a private right of action for violation of the FCC's implementing regulations.").

## Class Action Allegations

17. *Statutory Reference.* This action is properly maintainable as a class action under authority of Federal Rule Civil Procedure 23 because: (a) the class is so numerous that joinder of all members is impracticable; (b) there are questions of fact or law common to the class, which common questions predominate over questions affecting only individual members; (c) the representative parties will fairly and adequately protect the interest of the class; and (d) the class action is an appropriate method for the fair and efficient adjudication of the controversy.

18. *Class Definition.* The Plaintiff Class (hereinafter referred to as "Plaintiff Class") consists of all persons and entities, to which within four years of the filing of this Complaint, Defendants sent facsimile transmissions with content that discusses, describes, promotes products and/or services offered by Defendants, and does not contain the opt-out notice required by 47 U.S.C. § 227(b)(1)(C)(iii), (b)(2)(D), (b)(2)(E), (d)(2) or 47 C.F.R. § 64.1200(a)(4)(iii)-(vii).

19. *Class Size.* Upon information and belief, Plaintiff avers that the Plaintiff Class numbers are in the thousands of persons or entities.

20. *Adequacy of Representation.* The Plaintiff Class will be well represented by the class representative and class counsel. Plaintiff appreciates the responsibility of a class representative and understands the nature and significance of the claims made in this case. Plaintiff can fairly and adequately represent and protect the interests of the Plaintiff Class because there is no conflict between its interests and the interests of other class members. Proposed class counsel has the necessary resources, experience and ability to prosecute this case on a class action basis.

21. *Impracticability of Joinder.* Joinder of all Plaintiff Class members is impracticable due to the class' size and due to the relatively small potential monetary recovery for each Plaintiff Class member, in comparison to the time and costs associated with joinder in the litigation on and individual basis.

22. *Common Questions of Law and Fact are Predominant.* Questions of law and fact common to the class predominate over questions affecting only individual class members. Numerous questions may be jointly tried and would not require each member individually to litigate numerous and substantial questions to determine his or her right of recover following the class judgment.

23. *Common Questions of Fact.* This case presents numerous questions of fact that are common to all class members' claims. Defendants have engaged in a standardized course of conduct vis-à-vis class members, and Plaintiff's injuries arise out of that conduct. Plaintiff is informed and believes and upon such information and belief avers that the case arises out of a common nucleus of fact because, among other things, all junk faxes advertised Defendants' goods and services; all junk faxes were prepared, developed and sent by Defendants in the same manner for all recipients; and the faxes are the product of an organized fax-blasting campaign targeted to the class.

24. *Common Questions of Law.* The case presents numerous common questions of law, including, but not limited to:

    (1) Whether the faxes at issue advertise the commercial availability or quality of property, goods or services and therefore fall within the ambit of the TCPA, JFPA and the FCC's regulations promulgated thereunder;

    (2) Defendants' mode and method of obtaining the telephone numbers to which the

junk faxes were sent and whether the mode and method complied with the requirements of subsection 47 U.S.C. §227 (b)(1)(C)(ii) and the FCC's regulations promulgated thereunder;

(3) Whether Defendants complied with the Opt-Out Notice Requirements of the TCPA, JFPA and the FCC's regulations promulgated thereunder, and the legal consequences of the failure to comply with those requirements;

(4) What constitutes a knowing or willful violation of the TCPA within the meaning of section (b)(3);

(5) Whether Defendants committed knowing or willful violations of the TCPA;

(6) Whether damages should be increased on account of Defendants' knowing or willful violations of the TCPA and, if so, by what amount; and

(7) Whether injunctive relief is warranted to enjoin Defendants from further violations of the TCPA and JFPA.

25. *Appropriate Method for Fair and Efficient Resolution of the Controversy.* A class action is an appropriate method for the fair and efficient adjudication of the controversy for several reasons:

(1) Prosecuting separate actions by individual class members would create a risk inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants;

(2) Because Defendants have acted on grounds that apply generally to the class, final injunctive relief is appropriate respecting the class as a whole;

(3) Questions of law and fact common to members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy;

(4) Absent class certification, there is a possibility of multiple individual cases and, therefore, class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings.

(5) Most members of the Plaintiff Class are not likely to join or bring an individual action due to, among other reasons, the small amount to be recovered relative to the time, effort and expense necessary to join or bring an individual action. Because the statutory minimum damage is $500 per violation and the TCPA and JFPA does not authorize an award of attorneys' fees to a successful plaintiff, individual action to remedy Defendants' violations of the TCPA would be grossly uneconomical. As a practical matter, the claims of the vast majority of the Plaintiff Class are not likely to be redressed absent class certification.

(6) Equity dictates that all persons who stand to benefit from the relief sought herein should be subject to the lawsuit and, hence, subject to an order spreading the cost of litigation among class members in relationship to the benefits received.

## Cause of Action for Violation of 47 U.S.C. § 227

26. *Defendants' Violation of the Act.* Within four years of the filing of this Complaint and including, without limitation, September 24, 2015, Defendants violated the TCPA, JFPA and the FCC's regulations promulgated under the TCPA by sending facsimile advertisements with non compliant out-out notices from telephone facsimile machines, computers, or other devices to telephone facsimile machines of Plaintiff and members of the Plaintiff Class. Among other things, Defendants violated the TCPA, JFPA and the FCC's regulations because they failed to comply with the mandatory Opt-Out-Notice Requirements set forth in 47 U.S.C. § 227(b)(1)(C)(iii), (b)(2)(D) and (b)(2)(E), and by 47 C.F.R. § 64.1200(a)(4)(iii)-(vii), thus causing Plaintiff and Plaintiff Class to sustain

statutory damages, in addition to actual damages, including but not limited to those contemplated by Congress and the FCC.

27. Defendants are a sender of the junk faxes alleged in this Complaint because (1) it is the person or entity on whose behalf the facsimile advertisements were sent, and (2) its property, goods and services are advertised or promoted as commercially available in the advertisement.

28. To the extent facsimile advertisement were transmitted by Defendants to consumers who had given consent, had solicited the advertisements, or had an established business relationship with Defendants, the facsimile advertisements are still in violation of the TCPA as they did not contain the compliant opt-out notice required by law, making individual issues of consent, prior express permission, or an established business relationship, legally irrelevant.

29. *Right of Private Action.* Under section (b)(3) of the TCPA, Plaintiff has a private right of action to bring this action on behalf of itself and on behalf of the Plaintiff Class to redress Defendants' violations of the TCPA.

30. *Injunctive Relief.* Subsection (b)(3)(A) of the TCPA authorizes Plaintiff to bring an action to enjoin a violation of the TCPA. Plaintiff requests that preliminary and permanent injunctions issue to:

   (1) Prohibit Defendants, their employees, agents, representatives, contractors, affiliates and all persons and entities acting in concert with Defendants, from committing further violations of the TCPA, and thereby prohibiting Defendants, their employees, agents, representatives, contractors, affiliates, and all persons and entities acting with Defendants, from sending any further non compliant faxed advertisements to any person or entity;

(2) Require Defendants to deliver to Plaintiff all records of facsimile advertisements since four years of the filing of this Complaint, including all content sent via facsimile, transmission lists, and fax confirmation lists;

(3) Require Defendants to adopt ongoing educational, training and monitoring programs to ensure compliance with the TCPA and JFPA, and limiting facsimile advertising activity to personnel who have undergone such training;

(4) Require Defendants to provide written notice to all persons and entities to whom Defendants sent via facsimile transmission unsolicited advertisements, warning such persons and entities that the facsimile transmission of unsolicited advertisements is in violation of the TCPA and JFPA and that they should not be led or encouraged in any way by Defendants' facsimile transmissions to fax unsolicited advertisements of their own; and

(5) Require Defendants to conspicuously place on the homepage of their respective websites the warnings contained in (4) of this Paragraph 30.

31. *Damages.* Subsection (b)(3)(B) of the TCPA provides for the recovery of damages in the minimum amount of $500 for each violation of the TCPA by Defendants. In addition, Plaintiff is informed and believes and upon such information and belief avers that Defendants committed their violations willfully or knowingly and that the amount of statutory damages should be trebled, as also authorized by subjection (b)(3) of the TCPA.

**Prayer for Relief**

WHEREFORE, Plaintiff and the Plaintiff Class pray for judgment against Defendants:

(1) Certifying a class consisting of all persons and entities, to which within four years of the filing of this Complaint, Defendants sent facsimile transmissions with content that discusses, describes, or promotes products and/or services offered by

        Defendants, and does not contain the notice required by 47 U.S.C. § 227(b)(1)(C)(iii), (b)(2)(D) and (b)(2)(E), and by 47 C.F.R. § 64.1200(a)(4)(iii)-(vii).

(2)    Appointing Plaintiff as representative for the Plaintiff Class and awarding Plaintiff an incentive award for its efforts as class representative;

(3)    Appointing Plaintiff's counsel as counsel for the Plaintiff Class;

(4)    In accordance with subsection (b)(3)(B) of the TCPA and JFPA, for an award of statutory damages in the amount of $500 for each violation of the Act and the trebling of such statutory damages, exclusive of interest costs, according to proof;

(5)    For injunctive relief in accordance with subsection (b)(3)(A) of the TCPA and JFPA, (1) prohibiting Defendants, their employees, agents, representatives, contractors, affiliates and all persons and entities acting in concert with Defendants, from committing further violations of the TCPA, and thereby prohibiting Defendant, their employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with Defendants, from sending any further unsolicited faxed advertisements to any person or entity; (2) requiring Defendants to deliver to Plaintiff all records of facsimile advertisements since four years of the filing of this Complaint, including all content sent via facsimile, transmission lists, and fax confirmation lists; (3) requiring Defendants to adopt ongoing educational, training and monitoring activity to personnel who have undergone such training; (4) requiring Defendants to provide written notice to all persons and entities to whom Defendants sent via facsimile transmission unsolicited advertisements, informing such persons and entities that Defendants' facsimile transmission of unsolicited advertisements mislead recipients to fax unsolicited

    advertisements of their own; and (5) requiring Defendants to conspicuously place on the homepage of their respective websites the warnings contained in (4) of this subparagraph 5;

(6)    Ordering payment of costs of litigation, including without limitation costs of suit and attorneys' fees, spread among the members of the Plaintiff Class in relation to the benefits received by the Plaintiff Class;

(7)    For pre-judgment interest;

(8)    For costs of suit herein from Defendants;

(9)    For such other and further relief as the Court shall deem just and proper.

### Jury Demand

Plaintiff demand trial by jury on all issues for which a jury trial is allowed.

    Respectfully Submitted:

    */s/ George B. Recile*

    _____
    GEORGE B. RECILE (#11414)
    PRESTON L. HAYES (#29898)
    RYAN P. MONSOUR (#33286)
    MATTHEW A. SHERMAN (#32687)
    PATRICK R. FOLLETTE (#34547)
    BARRY W. SARTIN JR. (#34075)
    *Chehardy, Sherman, Ellis, Murray, Recile, Griffith, Stakelum & Hayes, L.L.P.*
    One Galleria Boulevard, Suite 1100
    Metairie, Louisiana 70001
    Telephone: (504) 833-5600
    Facsimile: (504) 613-4528
    *Counsel for Plaintiff*