UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DR. BARRY SARTIN,

       Plaintiff,

V.

EFK DIAGNOSTICS INC. & STANBIO
LABORATORY, L.P.,

       Defendants.

Civil Action No.:  2:16-cv-01816-SSV-JCW

Section "R"
Hon. Sarah S. Vance, District Judge
Division "2"
Hon. Joseph C. Wilkinson, Jr. Magistrate
Judge

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
CONSOLIDATED MOTION TO DISMISS OR MOTION TO STRIKE

## I.  PRELIMINARY STATEMENT

In his Putative Class Action Complaint ("Complaint"), Plaintiff Dr. Barry Sartin ("Plaintiff") alleges violations of the Telephone Consumer Protection Act, as amended by the Junk Fax Prevention Act, 47 U.S.C. § 227 ("TCPA"), based on his alleged receipt of a single fax (the "Fax") on September 24, 2015.  Defendants EFK Diagnostics, Inc. and Stanbio Laboratory, L.P. ("Defendants") move for the following relief:

First, Plaintiff's Complaint should be dismissed with prejudice pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 12(b)(1) because Plaintiff does not allege that he has suffered actual damage and he therefore lacks Article III standing.  Second, if the Court does not grant the motion to dismiss, it should strike Plaintiff's class allegations pursuant to FRCP Rule 12(f)

because the proposed class cannot be ascertained.  Finally, in the alternative, the Court should

stay this case until the United States Supreme Court issues an opinion in *Robins v. Spokeo*, which

will address the issue of Article III standing.

## II.    STATEMENT OF FACTS

Plaintiff alleges that on September 24, 2015, he "was the recipient of" a single unsolicited

fax advertisement.  *See* Class Action Compl. (Mar. 3, 2016) ("Compl.") ¶ 5, Dkt. No. 1

(emphasis added).  The Fax is attached as Exhibit A and incorporated by reference into the

Complaint.[1]  *See* Fax, attached to Compl. as Exhibit A, Dkt. No. 1-1.

The Fax was addressed and sent to East Jefferson General Hospital (the "Hospital").  *Id*.

Plaintiff does not explain, anywhere in his Complaint, his professional relationship and

arrangement with the Hospital, if any, or his basis for standing to bring this action.  The Hospital

is not a party to this case despite appearing first on the cover page of the Fax and being the

subscriber to the fax and telephone numbers listed thereon.  (In fact, if this case were to proceed

beyond the pleading stage, Defendants would show that the Hospital gave its permission to send

the Fax, and also instructed Defendants to add Plaintiff's name to it.)

Plaintiff seeks to represent the following class:

> [A]ll persons and entities, to which within four years of the filing
> of this Complaint, Defendants sent facsimile transmissions with
> content that discusses, describes, promotes products and/or
> services offered by Defendants, and does not contain the opt-out
> notice required by 47 U.S.C. § 227(b)(1)(C)(iii), (b)(2)(D),
> (b)(2)(E), (d)(2) or 47 C.F.R. § 64.1200(a)(4)(iii)-(vii).

---

[1]   In considering a motion to dismiss, the court may properly consider exhibits attached to the complaint.  *Adams v. Unione Meditteranea Di Sicurta*, No. Civ.A. 94-1954, 1998 WL 241731, at *1 (E.D. La. May 12, 1998); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

Compl. ¶ 18 (emphasis added).  Plaintiff alleges, without any foundation, that Defendants sent faxes to "thousands of persons or entities."  *Id.* ¶ 19.  Other than for its dramatic effect, Plaintiff does not explain how he concluded that there are potentially thousands of class members, or how that number is determinative or dispositive of any of the materially substantive or procedural allegations in this case.  Plaintiff further alleges, also based on nothing more than speculation and conjecture, that the faxes sent to the "thousands" of putative class members "were prepared, developed and sent by Defendants in the same manner for all recipients; and the faxes are the product of an organized fax-blasting campaign targeted to the class."  *Id.* ¶ 23 (emphasis added).  Plaintiff does not allege any injury or damages arising from his receipt of the Fax separate and apart from his statutory claim.

## III.   ARGUMENT

### A.   The Complaint Should be Dismissed Pursuant to Rule 12(b)(1) Because Plaintiff has Suffered No Injury and Therefore Lacks Article III Standing.

Plaintiff alleges only a technical statutory violation of the TCPA.  This is because he has not suffered any actual injury.  Accordingly, he lacks Article III standing.  To establish standing (and thus federal jurisdiction) under Article III, a plaintiff bears the burden of showing that he

> (1) . . . has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000).

The injury-in-fact requirement is the "irreducible constitutional minimum" for standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  Because the injury-in-fact requirement "is a hard floor of Article III jurisdiction," it "cannot be removed by statute."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009).  "Congress cannot erase Article III's standing

3

requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) *citing Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 100 (1979).  Moreover, the Supreme Court has "always insisted on strict compliance with this jurisdictional standing requirement." *Id.* at 819.  As the Supreme Court has recently cautioned, "[i]n an era of frequent litigation, class actions, sweeping injunctions with prospective effect, and continuing jurisdiction to enforce judicial remedies, courts must be more careful to insist on the formal rules of standing, not less so." *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 146 (2011).  To have standing, a plaintiff must do more than allege a mere statutory violation; instead, a plaintiff must show that the alleged violation caused "concrete and particularized" harm.  *Friends of the Earth*, 528 U.S. at 180; *Lujan*, 504 U.S. at 560.

In his Complaint, Plaintiff pleads nothing more than a naked statutory violation.  He does not plead even a *de minimis* injury, such as loss of paper, loss of ink toner, loss of time, or loss of the use of his fax line in connection with his alleged receipt of the Fax in question, as do many plaintiffs in TCPA actions.  Plaintiff does not plead a *de minimis* injury for the simple reason that he cannot:  the fax number and fax machine that would potentially give rise to those kinds of *de minimis* injuries belong to the Hospital.[2]  *See supra* at 2.  Because Plaintiff does not plead a cognizable injury in the Complaint separate and apart from an alleged naked statutory TCPA violation, his Complaint should be dismissed with prejudice for lack of Article III standing.

## B.  Plaintiff's Class Allegations are Inherently Flawed and Should be Stricken Pursuant to Rule 12(f).

### 1.  Legal standard under Rule 12(f).

In the event the Motion to Dismiss is not granted, the Court should strike Plaintiff's proposed class definition.  The Federal Rules of Civil Procedure provide a mechanism for

---

[2] Defendants allegedly sent the Fax to the Hospital's fax number, upon receiving permission from the Hospital.  *See* discussion *supra* Section II.  Plaintiff's name was provided by the Hospital as an additional addressee.  *Id.*

excising defective class allegations at the pleadings stage.  Under Rule 12(f), the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "Sometimes the issues are plain enough from the pleadings to determine whether the interests of absent parties are fairly encompassed within the named plaintiff's claim" or whether the action is inappropriate for class certification for other reasons.  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).  Before a proposed class can be certified, a putative class representative must demonstrate that the four elements of Rule 23(a) are met:  numerosity, commonality, typicality, and adequacy.  Fed. R. Civ. P. 23(a).  The plaintiff must also satisfy at least one requirement of Rule 23(b), such as Rule 23(b)(3)'s requirement that common questions "predominate over any questions affecting only individual members."  *Terrebonne v. Allstate Ins. Co.*, 251 F.R.D. 208, 211 (E.D. La. 2007) (citing Fed. R. Civ. P. 23(b)(3)).

Courts require two additional requirements that must also be met prior to certification. First, "the class sought to be represented must be adequately defined and clearly ascertainable." *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970).  "This requires that the class be defined in objective terms that are capable of present ascertainment."  *McGuire v. Int'l Paper Co.*, Civ. A. No. 1:92-cv-593BRR, 1994 WL 261360, at *3 (S.D. Miss. Feb. 18, 1994) (quotations omitted).  Ascertainability is not met when "[d]etermining class membership would . . . require an exhaustive series of substantive legal and factual determinations particular to the unique facts of each case."  *In re Vioxx Prods. Liab. Litig.*, No. MDL 1657, 2008 WL 4681368, at *10 (E.D. La. Oct. 21, 2008); *see also Middleton*, 2008 WL 906525, at *10 (citations omitted). In other words, a class definition must be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member."  7A Wright &

Miller, Fed. Prac. & Proc. § 1760 (3d ed. 2005). "Where it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings." *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) (affirming dismissal on the pleadings); *see also Wagner*, 99 F.R.D. at 282 (finding certification improper where "Plaintiffs have defined the putative class using a set of factors that does not lend itself to feasible identification of the class members").[3]

Second, "the party seeking to act in a representative capacity under Rule 23 must be a member of the proposed class." *Middleton v. Arledge*, Nos. 3:06-cv-303-WHB-LRA, 3:07-cv-350-TSL-JCS, 2008 WL 906525, at *8 (S.D. Miss. Mar. 31, 2008); *Wagner v. Cent. La. Elec. Co., Inc.*, 99 F.R.D. 279, 281 (E.D. La. 1983) (holding that it is an "implied prerequisite[] … that the [proposed class] representative[] … be [a] member[] of the class").

## 2. The Court should strike Plaintiff's inherently flawed proposed class definition.

Plaintiff's proposed class cannot be certified because: (1) there is no "objectively ascertainable" method to determine who is a member of the class, and even re-defining the proposed class will not solve this problem; and (2) he cannot lead a class of which he is not a member.[4] Because Plaintiff's class definition cannot meet the ascertainability requirement, as it must, the Court should strike Plaintiff's class definition pursuant to Rule 12(f). *See John*, 501 F.3d at 445.

---

[3] *See also Markey v. La. Citizens Fair Plan*, Civil Action No. 06-5473, 2008 WL 5427708, at *2 (E.D. La. Dec. 30, 2008) (dismissing class allegations on the pleadings); *Aguilar v. Allstate Fire & Cas. Ins. Co.*, Civil Action No. 06-4660, 2007 WL 734809, at *3 (E.D. La. Mar. 6, 2007) (same); *Caruso v. Allstate Ins. Co.*, Civil Action No. 06-2613, 2007 WL 2265100 (E.D. La. Aug. 3, 2007); *Stokes v. Allstate Indem. Co.*, Civil Action No. 06-1053, 2007 WL 1875847 (E.D. La. June 28, 2007); *Chetta v. State Farm & Cas. Co.*, Civil Action No. 06-4662, 2007 WL 1233546 (E.D. La. Apr. 25, 2007).

[4] Defendants in no way concede that the other requirements of Rule 23 may be met in this case. For example, to the extent Plaintiff attempts to re-define the class definition to exclude the Hospital, doing so would raise additional concerns regarding typicality and adequacy, even at this early stage in the litigation.

### a.    Plaintiff's class cannot be ascertained.

How a putative class is defined impacts how the parties and the Court will determine the members of the class.  Plaintiff's class definition focuses at times on the "recipient" of the alleged Fax or faxes and at other times focuses on the party to whom the Fax or faxes was "sent."  For example, Plaintiff is an alleged "recipient" of the Fax, but proposes to represent a class of "persons and entities" to whom Defendants "sent" a fax that failed to contain the requisite opt-out language.  Compl. ¶ 18.  Although these terms may seem interchangeable in a colloquial sense, the courts recognize that they are terms of art with very different meanings.[5]  Regardless, neither definition – or any other – can be certified in this particular case.  A class defined as those to whom faxes were "sent" will necessarily exclude potential class members, including Plaintiff.  A class defined as those who "received" faxes is administratively unfeasible.

Some courts have suggested that classes in TCPA fax cases can be ascertained by reviewing lists of fax "subscriber" numbers used by defendants in their advertising campaigns to determine to whom faxes were "sent."[6]  But that method would not work in this case because it would likely exclude "thousands" of potential class members, including Plaintiff.  Assuming (without conceding) that Defendants "sent" Plaintiff the Fax, they must also have "sent" it to the Hospital, the entity listed first on the Fax and the subscriber to the subject fax number.  *Supra* at 2.  Plaintiff alleges that Defendants sent faxes "in the same manner" to thousands of other

---

[5] Courts around the country have struggled to define members of a class in TCPA cases, whether it is the "recipient" of the fax, the "owner" of the fax machine, or the "subscriber" to the fax number.  *See Leyse v. Bank of Am.*, 804 F.3d 316, 322-23 (3d Cir. 2015) (collecting cases); *see also Page v. Regions Bank*, 917 F. Supp. 2d 1214, 1219 (N.D. Ala. 2012) (finding that a "subscriber" to a number – i.e., the listed party in phone records – is the party with standing under the TCPA).  The Fifth Circuit has not weighed in on this distinction.  Irrespective of the term, Plaintiff's proposed class fails.  In its July 15, 2015 Omnibus Order, the FCC addressed standing in an analogous context.  In doing so, the FCC focused on the identity of the consumer to whom the telephone number was assigned, as that consumer was ultimately billed for the call.  Declaratory Ruling & Order, 30 FCC Rcd. 7961, 7999-8000 (2015).  In that context, the Hospital would be conferred standing, not Plaintiff.

[6] This is the method suggested by the Sixth Circuit when a class is limited to "recipients."  *Imhoff Inv., LLC v. Alfoccino, Inc.*, 792 F.3d 627, 634 (6th Cir. 2015) (citations omitted).

entities and people.  Compl. ¶ 23.  Presumably, this means there was at least one individual

addressee (*e.g.*, Plaintiff) as well as a hospital or other entity addressee (*e.g.*, the Hospital) on

every one of those thousands of faxes.[7]  Using a list of the subscriber numbers, as courts have

done in less complicated cases, would thus impermissibly exclude "thousands" of "persons" in

Plaintiff's proposed class, and generally render "feasible identification of the class members"

impossible.  *Wagner*, 99 F.R.D. at 282.

The only way to ascertain the class to include all people and entities who allegedly

"received" faxes from Defendants, then, would be to:  (1) review all lists of fax numbers to

which faxes were allegedly sent, (2) locate every single one of the "thousands" of alleged faxes,

and (3) review those thousands of faxes to determine to whom they were addressed.  Even

assuming the allegedly "thousands" of faxes exist and could be found, that sort of review would

create "insurmountable administrative problems" requiring dismissal of the class allegations.

*Barasich v. Shell Pipeline Co., LP*, Civil Action No. 05-4180, 2008 WL 6468611, at *4 (E.D. La.

June 19, 2008) (quoting *McGuire*, 1994 WL 261360, at *5).  Because there is no way in which

the parties and the Court could ascertain the class in an administratively feasible manner,

regardless of how the class is defined, the class allegations should be stricken.

### b.    Plaintiff cannot lead a class of which he is not a member.

It is well-settled that a plaintiff cannot lead a class to which he does not belong.  *See*

*Middleton*, 2008 WL 906525, at *8.  Here, for example, if the parties attempted to ascertain the

class by reviewing a list of numbers to which faxes were allegedly sent, that list would include

---

[7] Defendants also note that courts are in agreement that the TCPA provides recovery for each violation, and is "not intended to provide for multiple recoveries per call."  *Charvat v. GVN Michigan, Inc.*, 561 F.3d 623, 632 n.8 (6th Cir. 2009).  Accordingly, even if he is ultimately successful in pursuing his TCPA claim against Defendants, he would be required to share any proceeds of his claim with the Hospital.  So would potential class members.  If the Court or the parties only know about the class members listed on the fax number lists (and not the other "recipients" on the cover sheets for the alleged faxes, the recipients would be denied their due process rights in the event of certification of a proposed class).

"subscribers" to the fax lines.  The Hospital is the subscriber to the fax number listed on the Fax. *Supra* at 2.  The class, being defined and ascertained according to fax number subscriber status, could not be represented by an individual who himself is not a subscriber.  Accordingly, because Plaintiff cannot represent a class to which he does not belong, the class allegations in the Complaint should be dismissed.[8]

**C.    Motion to Stay the Case Pending the Supreme Court's Ruling in *Robins v. Spokeo*.**

If the Court does not grant the Motion to Dismiss, as discussed above, the Court should, in the alternative, stay this matter pending the Supreme Court's ruling in *Robins v. Spokeo*.  135 S. Ct. 1892 (2015), *cert. granted*.  *Spokeo* asks the Supreme Court to resolve the issue of whether a plaintiff who alleges a statutory violation but who fails to allege a concrete injury-in-fact has standing to pursue allegations based on a breach of that statute.  Although the plaintiff in *Spokeo* alleged violations of the Fair Credit Reporting Act, the Supreme Court's resolution of the standing issue in that case is expected to apply to claims brought under other federal statutes, such as the TCPA, where plaintiffs seek statutory damages without suffering concrete injuries. In other words, in *Spokeo*, the Supreme Court may determine whether this Court has subject matter jurisdiction to hear Plaintiff's claims.

Absent dismissal, entry of a stay is appropriate in this case because the significant time, expense, and resources required to litigate this case on the merits will be wasted if the Supreme Court rules that a plaintiff lacks Article III standing to bring suit based solely on allegations of a statutory violation.  This Court may stay this action to avoid such unnecessary expenditures of time and resources.  *See, e.g.*, *Clinton v. Jones*, 520 U.S. 681, 706 (1997).

---

[8] Even were the reverse true, and Plaintiff's name was included on a fax number list instead of the Hospital, that would similarly prevent the parties from ascertaining the full membership of the proposed class.  Indeed, the Hospital should be a proposed class member.

Other factors also favor a stay.  The length of a stay would be neither indefinite nor overly lengthy, because the Supreme Court has already heard argument in *Spokeo*, which means that a decision is imminent.  Plaintiff will not be unduly prejudiced or harmed by a stay of proceedings, which only stands to delay the case for a matter of months, at most.  Conversely, without a stay, Defendants could be forced to incur significant litigation expenses, which would be wasted if the Supreme Court rules favorably for the defendant in *Spokeo*.

Finally, there is a public interest in judicial economy and efficiency, which will be promoted by a stay of these proceedings.  A modest stay here will free up judicial resources without any unfair prejudice or burden on the Plaintiff.  Accordingly, the Court should grant a stay of this action pending the U.S. Supreme Court's ruling in *Spokeo*, as other courts have done. *Tel. Sci. Corp. v. Hilton Grand Vacations Co., LLC*, Case No: 6:15-cv-969-Orl-41DAB, 2015 WL 7444409, at *2-3 (M.D. Fla. Nov. 20, 2015); *Figueroa v. Carrington Mortg. Servs. LLC*, Case No. 8:15-cv-2414-T-24TGW, 2016 WL 718289, at *2-3 (M.D. Fla. Feb. 22, 2016).[9]

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiff's Complaint, with prejudice.  In the event the Court does not dismiss Plaintiff's Complaint, with prejudice, Defendants also respectfully request that the Court strike Plaintiff's class allegations and stay this matter pending the Supreme Court's decision in *Spokeo*.

Dated:  May 3, 2016

Respectfully submitted,

---

[9] *See also Boise v. ACE USA, Inc.*, No. 15-Civ-21264, 2015 WL 4077433, at *7 (S.D. Fla. July 6, 2015); *Luster v. Jewelers*, No. 1:15-cv-2854-WSD, 2015 WL 9255553, at *3 (N.D. Ga. Dec. 17, 2015).

35662256.2

/S/ Isaac H. Ryan
ISAAC H. RYAN (23925)
ROBERT E. KERRIGAN, JR. (7350)
DEUTSCH KERRIGAN, L.L.P.
755 Magazine Street
New Orleans, Louisiana  70130
Telephone:  (504) 581-5141
*Counsel for*
*EFK Diagnostics, Inc. and*
*Stanbio Laboratory, L.P.*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document has been electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record, on this 3rd day of May, 2016.

/S/ Isaac H. Ryan

11

35662256.2