UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DR. BARRY SARTIN                                         CIVIL ACTION

VERSUS                                                         NO. 16-1816

EKF DIAGNOSTICS, INC. &                             SECTION "R" (2)
STANBIO LABORATORY, L.P.


## ORDER AND REASONS

Defendants EKF Diagnostics Inc. and Stanbio Laboratory L.P.'s move to dismiss plaintiff's complaint for lack of Article III standing, or, in the alternative, to strike the complaint's class action allegations as insufficient to establish an ascertainable class.[1]  Because Dr. Sartin's amended complaint plausibly alleges a judicially cognizable injury, and because membership in the proposed class can be feasibly determined by using objective data in defendants' fax logs, the Court denies both motions.


## I.      BACKGROUND

In this "junk fax" case, Dr. Sartin alleges that defendants Stanbio Laboratory and its parent company, EKF Diagnostics, violated the Telephone Consumer Protection Act of 1991 (TCPA) by sending unsolicited faxes

---

[1]       R. Doc. 26.

advertising their products and services. Dr. Sartin alleges that he "was the recipient of [a] fax advertisement sent by Defendants on September 24, 2014."[2]  The fax, which Dr. Sartin submits as an exhibit to his complaint, discusses a "Glycated Serum Protein LiquiColor Assay," which the fax describes as "a 2-3 week glycemic marker that could benefit patients" with certain medical conditions.[3]  The fax's cover sheet indicates that it was sent from Stanbio Laboratory and addressed to two recipients: East Jefferson General Hospital and Dr. Barry Sartin.[4]  A message on the cover sheet begins "Dear Dr. Sartin" and concludes by stating "[i]f your lab is interested in setting up the GSP, we are offering _free validation kits_ at this time."[5]  According to Dr. Sartin, this fax was part of a larger campaign, in which defendants purchased lists of fax numbers from third parties and "blasted thousands of junk faxes to businesses" without obtaining prior consent.[6]

On March 3, 2016, Dr. Sartin filed this lawsuit against defendants, seeking statutory damages and injunctive relief.[7]  Dr. Sartin brings his TCPA claims on behalf of himself and a proposed class consisting of similarly

---

[2]   R. Doc. 1 at 2 ¶ 5.
[3]   R. Doc. 1-1 at 1.
[4]   _Id._
[5]   _Id._ (emphasis in the original).
[6]   R. Doc. 1 at 5 ¶¶ 13, 14.
[7]   R. Doc. 1.

2

situated fax recipients.  On May 3, 2016, defendants filed their first motion to dismiss Dr. Sartin's complaint for lack of Article III standing.[8]  Because Dr. Sartin's complaint failed to allege any facts indicating that the defendants' fax caused Dr. Sartin a concrete injury in fact, the Court granted defendants' motion on July 5, 2016.[9]  The dismissal was without prejudice, and Dr. Sartin was granted leave to file an amended complaint.[10]

Dr. Sartin filed an amended complaint alleging that the unsolicited fax caused Dr. Sartin and the class members to suffer statutory damages, and caused Dr. Sartin to "waste[] valuable time reviewing the fax, time that was taken away from his medical practice, and time that he could have otherwise spent performing billable medical procedures."[11]  Additionally, Dr. Sartin alleges that the fax tied up his fax line that he relies on for his business.[12]  In response, defendants again filed a 12(b)(1) motion to dismiss for lack of standing, or in the alternative, motion to strike Dr. Sartin's class allegations under Rule 12(f).

---

[8]   R. Doc. 5.

[9]   R. Doc. 19.

[10]   *Id.* at 11-12.

[11]   R. Doc. 25 at 3 ¶ 5.

[12]   *Id.*

## II.   LEGAL STANDARD

A standing motion challenges the Court's subject matter jurisdiction, and it is governed by Federal Rule of Civil Procedure 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). A district court may dismiss for lack of subject matter jurisdiction on any one of three bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986) (citation omitted).  Furthermore, plaintiff bears the burden of demonstrating that subject matter jurisdiction exists. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

Defendants offer no evidence by affidavit or otherwise to support their argument that plaintiff lacks standing. In the absence of such evidence, the Court treats defendants' motion as a "facial attack" on the complaint, in which case review "is limited to whether the complaint is sufficient to allege jurisdiction." *Id.*; *see also Russell v. Choicepoint Servs., Inc.*, 302 F. Supp.

2d 654, 663 (E.D. La. 2004).   Accordingly, the Court accepts as true all factual allegations set forth in the complaint.   *Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (quoting *Pennell v. City of San Jose*, 485 U.S. 1, 7 (1988)).

## III.   DISCUSSION

The TCPA makes it unlawful to use a fax machine to send an unsolicited advertisement.   47 U.S.C. § 227(b)(1)(C).[13]   It also provides a private right of action, which permits any "person or entity" to bring an action seeking (1) to enjoin a violation of the Act; (2) to recover for actual monetary loss from such a violation or to receive statutory damages of $500 per violation, whichever is greater; or (3) to pursue both injunctive and monetary relief.   47 U.S.C. § 227(b)(3).   As the Eighth Circuit recently explained, the TCPA's plain terms authorize statutory damages for each sending of an unsolicited fax advertisement.   *Sandusky Wellness Ctr., LLC*

---

[13]   An unsolicited advertisement does not violate the TCPA if the sender can demonstrate that "(1) the sender has an established business relationship with the recipient; (2) the sender obtained the recipient's fax number either through a voluntary communication between the two or through a public source on which the recipient voluntarily made the number available; and (3) the fax has an opt-out notice meeting the requirements of the statute." *Physicians Healthsource, Inc. v. Stryker Sales Corp.*, 65 F. Supp. 3d 482, 494 (W.D. Mich. 2014), *as amended* (Jan 12, 2015) (citing 47 U.S.C. § 227(b)(1)(C).

*v. Medtox Sci., Inc.*, 821 F.3d 992, 997 (8th Cir. 2016) (citing *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 914 (7th Cir. 2011)).

### A.    Article III Standing

Defendants first contend that Dr. Sartin lacks standing to bring his claims.  The requirement that a party have standing to bring suit flows from Article III of the Constitution, which limits the scope of the federal judicial power to the adjudication of "cases" or "controversies."  U.S. Const. art. III, § 2.  Standing consists of three elements: (1) the plaintiff must have suffered an "injury-in-fact," which is an "actual or imminent" invasion of a legally protected interest that is "concrete and particularized"; (2) the injury must be "fairly traceable" to the challenged conduct of the defendant; and (3) it must be likely that plaintiff's injury will be redressed by a favorable judicial decision.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing each element.  *Spokeo, Inc. v. Robins*, 578 U.S. ____, ____, 136 S. Ct. 1540, 1547 (2016).

As the Supreme Court recently emphasized in *Spokeo*, *supra*, the Constitution mandates an injury in fact, and "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a

plaintiff who would not otherwise have standing." *Spokeo,* 136 S. Ct. at 1547-48 (2016) (quoting *Raines v. Byrd*, 521 U.S. 811, 820 n. 3 (1997)).  Congress may, however, "create a statutory right or entitlement[,] the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of statute." *Warth v. Seldin*, 422 U.S. 490, 514 (1975) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n. 3 (1973)).  In other words, "[t]he actual or threatened injury required by Art[icle] III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'" *Id.* at 500 (quoting *Linda R.S.*, 410 U.S. at 617 n. 3).

Nonetheless, *Spokeo* held that an injury in fact does not automatically exist "whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 136 S. Ct. at 1549.  Article III requires a concrete injury even in the context of a statutory violation.  *Id.*  Therefore, a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement . . . ." *Id.*  Instead, a plaintiff suing to vindicate a statutory right must identify a concrete and particularized injury that he or she suffered as a result of the statutory violation.  *Id.*; *see also Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1251 (11th Cir. 2015)

("[W]here a statute confers new legal rights on a person, that person will have Article III standing to sue where the facts establish a concrete, particularized, and personal injury to that person as a result of the violation of the newly created legal rights.").

Relying on standing doctrine and the Supreme Court's recent decision in *Spokeo*, this Court dismissed Dr. Sartin's initial complaint because he failed to allege how defendants' purported violation of the TCPA caused him concrete harm.   Now, Dr. Sartin's amended complaint alleges that the defendants' TCPA violation caused him and other class members injury by wasting their time, taking their time away from income producing activities, and tying up fax machines relied on in their businesses.   Defendants contend that despite these additions in his amended complaint, Dr. Sartin still alleges only a bare violation of the TCPA and fails to establish a judicially cognizable injury in fact.

In making it unlawful to use a fax machine to send an unsolicited advertisement, the TCPA vests all persons with a legal right to be free from the intrusion of unsolicited fax advertisements.  *Davies v. W.W. Grainger, Inc.*, No. 13-3546, 2016 WL 1298667, at *2 (N.D. Ill. Apr. 4, 2016) ("[T]he relevant legal right created by Congress under the TCPA is the right to be free from fax advertisements whose opt-out notices are not TCPA-compliant.");

*see also Palm Beach*, 781 F.3d at 1251 (noting that statutory rights "may be inferred from conduct prohibited by [the statute]"); *Jamison v. Esurance Ins. Servs., Inc.*, No. 15-2484, 2016 WL 320646, at *2 (N.D. Tex. Jan. 27, 2016) (finding that the TCPA's prohibition on automatic dialing creates a legal right to be free of such calls).  At issue is whether defendants' alleged violation of this statutory right caused Dr. Sartin a concrete and particularized injury in fact.

The Fifth Circuit has not yet addressed what type of injury an individual must suffer to have Article III standing to sue for a TCPA violation. Other courts have addressed the type of injuries at issue here.  In *Palm Beach*, the Eleventh Circuit held that Article III does not require proof of receipt of the allegedly unlawful fax.  781 F.3d at 1251.  It reasoned that, regardless of whether faxes are printed or viewed, an unsolicited fax creates "a concrete and personalized injury in the form of the occupation of [one's] fax machine for the period of time required for the electronic transmission of the data . . . ."  *Id.*  This occupation of a plaintiff's fax machine for a period of time "is among the injuries intended to be prevented by the statute and is sufficiently personal or particularized to [plaintiff] as to provide standing." *Id.* at 1252.

Further, in *American Copper & Brass, Inc. v. Lake City Industrial*

*Products, Inc.*, the Sixth Circuit reasoned that "unsolicited fax advertisements impose costs on all recipients, irrespective of ownership and the cost of paper and ink, because such advertisements *waste the recipients' time* and impede the free flow of commerce." *Id.* (emphasis added); *see also Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*, 747 F.3d 489, 491-92 (7th Cir. 2014) (stating that "[w]hether or not the user of the fax machine is an owner, he may be annoyed, distracted, or otherwise inconvenienced if his use of the machine is interrupted by unsolicited faxes to it . . . ."). The Seventh Circuit employed similar reasoning in *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682 (7th Cir. 2013). Although not ruling on the issue of standing, the court explained that "[e]ven a recipient who gets the fax on a computer and deletes it without printing [the fax] suffers some loss: the value of the time necessary to realize that the inbox has been cluttered by junk." *Id.* at 684.

Consistent with the broad definition of cognizable harm in *Palm Beach*, *American Copper*, and *Holtzman*, a number of district courts have found that the wasted time associated with receipt of an unlawful fax or telephone call suffices to confer standing to sue under the TCPA. *See Leung v. XPO Logistics, Inc.*, No. 15-03877, 2015 WL 10433667, at *4 (N.D. Ill. Dec. 9, 2015) (collecting cases); *Martin v. Leading Edge Recovery Sols., LLC*, No.

11-5886, 2012 WL 3292838, at *3 (N.D. Ill. Aug. 10, 2012) ("Plaintiffs . . . were directly injured by defendants' violations of the TCPA because they had to spend time tending to unwanted calls and their cell phone minutes were depleted."); *Kane v. Nat'l Action Fin. Servs., Inc.*, No. 11-11505, 2011 WL 6018403, at *5 (E.D. Mich. Nov. 7, 2011) (finding that plaintiff's allegation that he received several hundred phone calls on his cell phone was sufficient to establish standing to bring claim under TCPA, regardless of whether he incurred charges for any of the calls); *King v. Time Warner Cable*, 113 F. Supp. 3d 718, 728 (S.D.N.Y. 2015) (same).

Both sides rely on non-precedential, post-*Spokeo* TCPA cases to support their arguments for or against standing. *See Rogers v. Capital One Bank (USA), N.A.*, No. 15-4016, 2016 WL 3162592, at *2 (N.D. Ga. June 7, 2016) (finding injury in fact based on unwanted calls to TCPA plaintiffs' personal cell phones because phones were unavailable for use during the unwanted calls); *Booth v. Appstack, Inc.*, No. 13-1533, 2016 WL 3030256, at *5 (W.D. Wa. May 25, 2016) (same); *Brodsky v. Humana Dental Ins. Co.*, No. 10-3233, 2016 WL 5476233, at *10-11 (N.D. Ill. Sept. 29, 2016) (finding that TCPA plaintiffs had standing because unwanted faxes occupied their fax machines and wasted their time). *But see* Transcript of Hearing on Motion to Dismiss at 22-26, *Susinno v. Work Out World, Inc.*, No. 15-5881 (D.N.J.

11

Aug. 1, 2016), ECF No. 31 (granting motion to dismiss after finding that TCPA plaintiff had not suffered an injury in fact from only one unwanted cell phone call);  *Romero v. Dep't Stores Nat'l Bank*, No. 15-193, 2016 WL 4184099, at *4-6 (S.D. Cal. Aug. 5, 2016) (finding no standing because plaintiff's alleged injury was not connected to the alleged TCPA violation). Of these, the best reasoned and the most clearly analogous is *Brodsky*, which is the only case that involved faxes.

In *Brodsky*, the court analyzed the plaintiff's alleged harm in light of *Spokeo* and determined that the plaintiff's alleged injuries of wasted time and the occupation of his fax line and machine were sufficiently particularized and concrete to satisfy Article III's injury-in-fact requirement. *Brodsky*, 2016 WL 5476233, at *10-11.  In making this determination, the *Brodsky* court found that the alleged injuries were tangible, but even if they were intangible, they satisfied *Spokeo. Id.* at *11.  The *Brodsky* court noted that *Spokeo* instructed courts to look to the "'judgment' of Congress" in ascertaining whether an intangible harm constitutes an injury in fact.  *Id.* at *10 (quoting *Spokeo*, 136 S. Ct. at 1549).  Following *Spokeo*'s instructions, the *Brodsky* court found that the "Congressional judgment similarly suggests" that the plaintiff had standing, since Congress "enacted the TCPA's restrictions on unwanted faxes 'to protect citizens from the loss of the use of

12

their fax machines during the transmission of fax data.'" *Id.* at *11 (quoting *Palm Beach*, 781 F.3d at 1252). The Court finds the reasoning of *Brodsky* to be persuasive, especially in light of the legislative history of the TCPA. *See* S. Rep. No. 102-178, 1991 WL 211220, at 2 (1991) *as reprinted in* 1991 U.S.C.C.A.N. 1968, 1969 (noting that consumers have identified, *inter alia*, wasted time and tied up machines as problems caused by unsolicited calls and faxes; H.R. Rep. 102-317, 1991 WL 245201, at 10 (1991) (noting that unsolicited faxes are problematic because fax machines are "unavailable for legitimate business messages while processing and printing the junk fax"). Thus, Dr. Sartin's alleged injuries are of the type that the TCPA sought to redress, and Congressional judgment supports finding that these alleged injuries satisfy Article III's requirements. *See Wendt v. 24 Hour Fitness USA, Inc.*, 821 F.3d 547, 552 (5th Cir. 2016) (noting that where "plaintiff's claim of injury in fact depends on legal rights conferred by statute, it is the particular statute and the rights it conveys that guide the standing determination").

Defendants' additional argument that because Dr. Sartin "was not the recipient or primary addressee of the [f]ax, and the [f]ax was not sent to a phone line he owned or to which he subscribed,"[14] he lacks standing, is

---

[14]    R. Doc. 26-1 at 7.

13

without merit.  Plaintiff's amended complaint alleges that the fax was sent to him and that it was his fax machine.  At this stage, the Court accepts Dr. Sartin's factual allegations as true.  Further, ownership of the fax machine is not required to bring a TCPA claim.  *See, e.g.*, *American Copper*, 757 F.3d at 544; *Holtzman*, 728 F.3d at 684; *Arnold Chapman*, 747 F.3d at 491-92; *Sandusky*, 821 F.3d at 997.  Therefore, the Court rejects this argument.

Because Dr. Sartin's amended complaint alleges judicially cognizable injuries that are traceable to defendants and can be remedied by a ruling in Dr. Sartin's favor, Dr. Sartin has standing and defendants' motion to dismiss is denied.

## B.    Motion to Strike Class Allegations

Next, defendants ask the Court to strike Dr. Sartin's class allegations under Federal Rule of Civil Procedure 12(f).  Dr. Sartin defines the putative class as follows:

> [A]ll persons and entities, who within four years of the filing of this Complaint, received facsimile transmissions sent by Defendants with content that discusses, describes [or] promotes products and/or services offered by Defendants, and does not contain the opt-out notice required by 47 U.S.C. §§ 227(b)(1)(C)(iii), (b)(2)(D), (b)(2)(E), (d)(2) or 47 C.F.R. § 64.1200(a)(iii)-(iv).[15]

Defendants challenge Dr. Sartin's class definition on two grounds.  Neither

---

[15]    R. Doc. 25 at 2 ¶ 3.

14

is persuasive.

First, defendants argue that Dr. Sartin is not a member of the proposed class because defendants' fax was allegedly "sent," not to Dr. Sartin, but to the subscriber of the fax number, East Jefferson General Hospital.  While defendants are correct that a plaintiff cannot lead a class to which he or she does not belong, *see, e.g.*, *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982), the pleadings reveal no such problem here.  Dr. Sartin alleges that he received an unsolicited fax advertisement from defendants.  The fax, which is attached as an exhibit to the complaint, is addressed to both "East Jefferson General Hospital" and "Dr. Barry Sartin."[16]  The message on the fax's cover sheet begins "Dear Dr. Sartin."[17]  Because the fax appeared at Dr. Sartin's workplace and was addressed to his attention, Dr. Sartin has plausibly alleged that he "received" a fax "sent" by defendants.  Although defendants assert that a fax is "sent" only to the subscriber of the line,[18] they provide neither case law nor argument to support this counter-intuitive position.  *Cf. Merriam-Webster Dictionary Online*, www.merriam-webster.com (last visited December 9, 2016) (defining "send" as "to cause (a

---

[16]    R. Doc. 1-1 at 1.

[17]    *Id.*

[18]    R. Doc. 26-1 at 10 (arguing that "[a] class defined as those to whom faxes were 'sent' will necessarily exclude potential class members, including Plaintiff.")

letter, an e-mail, a package, etc.) to go to or be carried from one place or person to another.").[19]

Further, the sole case cited by defendants in support of their argument that Dr. Sartin is not a member of this class is *Edwards v. Oportun, Inc.*, No. 16-519, 2016 WL 4203853, at *3 (N.D. Ca. June 14, 2016).  Although the court in *Edwards* struck class allegations in a TCPA case, the plaintiff there sought to define the class as those who "received calls 'made by or on behalf of Defendant in order to promote its products or services.'"  *Id.* (quoting plaintiff's First Amended Complaint).  Because the plaintiff in *Edwards* did not allege that he ever received calls made by the defendant to promote its products or services, the court granted the motion to strike with leave to amend to change the class definition.  *Id.*  Dr. Sartin, on the other hand, has alleged facts indicating he is a member of the class, *i.e.*, that he received a fax

---

[19]     To the extent defendants intend to argue that ownership of the affected fax machine is a statutory requirement to bringing a junk fax suit under the TCPA, this argument also fails.  As a number of courts have held, the TCPA "contains no terms that would limit violation claims to those who own machines assaulted by junk faxes." *Chapman v. Wagener Equities, Inc.*, No. 09-07299, 2014 WL 540250, at *4 (N.D. Ill. Feb. 11, 2014) (approving class definition including "all persons who . . . were successfully sent a fax"); *see also Sandusky*, 821 F.3d at 997 (noting that the TCPA does not require ownership of the fax machine); *Bridgeview Health Care Ctr. Ltd. v. Clark*, No. 09- 5601, 2011 WL 4628744, at *3 (N.D. Ill. Sept. 30, 2011) (finding that class definition "language regarding ownership of the receiving machine is not required by the Act").

from defendants with content that discusses and promotes defendants' product.

Second, defendants argue that Dr. Sartin's proposed class definition fails to establish an ascertainable group, whose boundaries can be defined and policed in an administratively feasible way.  To maintain a class action, the proposed class must be adequately defined and clearly ascertainable by reference to objective criteria. *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012) (quoting *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970)).  The class definition must be sufficiently definite in that it is administratively feasible for the court to determine whether a particular individual is a member. *Mike v. Safeco Ins. Co. of Am.*, 223 F.R.D. 50, 52-53 (D. Conn. 2004) (citing Wright & Miller, 7A *Federal Practice and Procedure*, § 1760 (2d ed.)).  Nonetheless, "the court need not know the identity of each class member before certification; ascertainability requires only that the court be able to identify class members at some stage of the proceeding." *Frey v. First Nat. Bank Sw.*, 602 F. App'x 164, 168 (5th Cir. 2015).  Thus, "if the general outlines of the membership of the class are determinable at the outset of the litigation, a class will be deemed to exist." *Lee v. Am. Airlines, Inc.*, No. 01-1179, 2002 WL 31230803, at *4 (N.D. Tex. Sept. 30, 2002) (quoting Wright & Miller, 7A *Federal Practice and*

*Procedure*, § 1760 (2d ed.)).

Dr. Sartin's proposed class meets the ascertainability requirement. In their briefs, defendants and Dr. Sartin both refer to fax logs or fax lists showing the numbers to which defendants sent fax transmissions.[20] As Dr. Sartin correctly notes, fax logs provide objective data that make it possible to ascertain which entities and/or individuals received the faxes at issue. *See*, *e.g.*, *Sandusky*, 821 F.3d at 997 ("[F]ax logs showing the numbers that received each fax are objective criteria that make the recipient clearly ascertainable."); *Am. Copper*, 757 F.3d at 545 ("[T]he record in fact demonstrates that fax numbers are objective data satisfying the ascertainability requirement."); *Avio, Inc. v. Alfoccino, Inc.*, 311 F.R.D. 434, 442 (E.D. Mich. 2015) ("Plaintiff possesses a list of numbers to which the fax was sent, and it is certainly feasible to determine which individuals and businesses received the faxes at those numbers."). As this litigation proceeds, the data contained in the fax logs will permit the Court and the parties to objectively determine whether potential class members fall within the boundaries of Dr. Sartin's class. This is true even if, as Dr. Sartin alleges, the class encompasses a substantial number of individuals and entities.[21] *See*

---

[20] R. Doc. 26-1 at 10-12; R. Doc. 30 at 12-13.
[21] R. Doc. 25 at 2 ¶ 4.

18

*Arnold Chapman*, 747 F.3d at 492 (affirming class certification in a TCPA class action involving 10,145 persons); *St. Louis Heart Ctr., Inc. v. Vein Centers For Excellence, Inc.*, No. 12-174, 2013 WL 6498245, at *4 (E.D. Mo. Dec. 11, 2013) (finding that "including in the class all persons who were sent a fax . . . does not render the class unascertainable or overbroad.").

Defendants correctly note that class membership cannot be ascertained from the fax logs alone.  Because individual faxes may have been sent to multiple recipients—including the fax allegedly sent to Dr. Sartin, which was addressed to both Dr. Sartin and Eastern Jefferson General Hospital—single entries on defendants' fax logs might in fact signify multiple potential class members.  Nonetheless, Rule 23 does not require that all members of a class be instantly determinable without any individual examination; it need only be "*administratively feasible* for the court to determine whether a particular individual is a member of the proposed class." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537-38 (6th Cir. 2012) (emphasis added).  Although certain faxes shown in the logs may have been sent to multiple recipients, class membership can feasibly be determined by reviewing the actual faxes to determine the individuals and entities to whom they were addressed.  This straightforward, mechanical procedure can be done without resort to individualized hearings or inquiry

into the merits of each potential class member's claims.  Thus, Dr. Sartin's proposed class does not present the type of administrative quandaries that have caused other classes to fail for lack of ascertainability.  *Cf. Barasich v. Shell Pipeline Co.*, LP, No. 05-4180, 2008 WL 6468611, at *4 (E.D. La. June 19, 2008) (denying class certification when the determination of whether an individual was a class member could not be made without inquiring into the merits of each person's claim); *McGuire v. Int'l Paper Co.*, No. 92-593, 1994 WL 261360, at *5 (S.D. Miss. Feb. 18, 1994) (finding proposed subclass untenable because determining membership would require prospective subclass members to submit to blood tests and depositions and would necessitate "an inestimable number of individual hearings").

Defendants' argument that this type of review necessarily creates "insurmountable administrative problems"[22] has been consistently rejected by other courts in the TCPA context.  *See, e.g.*, *Sandusky*, 821 F.3d at 997; *Am. Copper*, 757 F.3d at 545; *Avio, Inc.*, 311 F.R.D. at 442; *Brodsky*, 2016 WL 5476233, at *9 (noting that defendant's administrative concerns over determining all of the fax recipients can be addressed through case management techniques and do not warrant denial of class certification).  As in *Brodsky*, any administrative concerns that defendants have at this stage

---

[22]   R. Doc. 26-1 at 11.

in the litigation can be addressed in future case management orders and do not warrant striking Dr. Sartin's class allegations.

## IV.   CONCLUSION

For the foregoing reasons, the Court DENIES defendants' motion to dismiss for lack of Article III standing, as well as defendants' motion strike plaintiff's class allegations.

New Orleans, Louisiana, this ___28th___ day of December, 2016.

_Sarah Vance_
_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE